Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

- 899 -

**Nebraska Supreme Court Advance Sheets
316 Nebraska Reports**
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

**State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Amy A. Miller, respondent.**

___ N.W.3d ___

Filed June 21, 2024.    No. S-23-520.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. **Disciplinary Proceedings.** Violation of a disciplinary rule concerning the practice of law is a ground for discipline.

3. ____. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances.

4. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

5. ____. The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public.

6. ____. With respect to the imposition of attorney discipline, each attorney discipline case must be evaluated in light of its particular facts and circumstances.

7. ____. For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.

- 900 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

8.  ____. The propriety of a sanction in an attorney discipline case must be considered with reference to the sanctions imposed in prior similar cases.

Original action. Judgment of suspension.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

This is an attorney discipline case in which the only question before this court is the appropriate discipline. The Counsel for Discipline of the Nebraska Supreme Court, the relator, brought formal charges against Amy A. Miller, the respondent, in which it alleged that Miller abused the attorney-client privilege as it pertains to protected communications between a lawyer and an inmate at a state prison. Miller unconditionally admitted all factual allegations and legal assertions contained in the formal charges. She also admitted that she violated her oath of office as an attorney, as set forth in Neb. Rev. Stat. § 7-104 (Reissue 2022), and that she violated Neb. Ct. R. of Prof. Cond. § 3-508.4(a), (c), and (d) (rev. 2016). We granted the relator's motion for judgment on the pleadings as to the facts. A court-appointed referee considering only the issue of appropriate discipline recommended that Miller be suspended from the practice of law for 30 days, followed by 18 months' probation. Miller takes exception to the recommended sanction as being excessive. We order that Miller be suspended from the practice of law for 90 days, followed by 9 months' probation, effective immediately.

## STATEMENT OF FACTS

Miller was admitted to the practice of law in Nebraska on September 24, 1996. At all times relevant to these proceedings, Miller was engaged in the practice of law in Lincoln, Nebraska. Miller was employed as an attorney with the American Civil Liberties Union (ACLU) of Nebraska until

- 901 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

November 8, 2019, when she submitted her resignation. In February 2020, Miller joined Disability Rights Nebraska as a staff attorney, where she currently practices.

On July 11, 2023, Miller was formally charged with violations of the Nebraska Rules of Professional Conduct and her oath of office as an attorney. On September 7, Miller filed an answer and unconditional admission in which she unconditionally admitted each and every factual allegation contained in the formal charges, and further admitted to each and every legal assertion made in the formal charges. Miller admitted that she violated her oath of office as an attorney and that she violated § 3-508.4(a), (c), and (d) (misconduct) of the Nebraska Rules of Professional Conduct.

The relator filed a motion for judgment on the pleadings. Miller filed a response, asking the court to appoint a referee for the purpose of receiving evidence as to the appropriate discipline to impose.

On November 22, 2023, the court granted the relator's motion for judgment on the pleadings as to the facts. The court appointed a referee "to take evidence and report," limited to the issue of appropriate discipline.

After an evidentiary hearing, the referee reported his findings of fact and recommendations for the appropriate sanction. Briefly, the following is a summary of the conduct from which the formal charges arise and to which the parties stipulated, as set forth in the "Report of Referee":

> At all relevant times, ACLU of Nebraska represented several inmates in the Nebraska State Penitentiary in a class action lawsuit styled *Sabata v. Nebraska Department of Correctional Services*, Case No. 4:17-CV-03107, in the U.S. District Court for the District of Nebraska.
>
> In the spring of 2018, Miller interviewed an inmate at the Nebraska State Penitentiary in Lincoln, Nebraska, who was a putative member of the class action. The inmate's initials, based on his legal name at the time, was D.L. Because D.L. was thought to be a good candidate

- 902 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

to join the class action lawsuit as a named representative, Miller interviewed him to determine if he would be willing to do so.

In the fall of 2018, Miller began a romantic relationship with D.L. They communicated by mail and telephone while D.L. was incarcerated, under the guise of attorney-client communications, in order to further the personal romantic relationship.

Contrary to the rules and regulations of the Nebraska Department of Correctional Services (NDCS), Miller sent to, and received from D.L., personal correspondence in envelopes marked as "legal mail" or "attorney mail." Miller engaged in such written communications with D.L. until November 4, 2019, when prison officials intercepted Miller's personal correspondence in the middle of a packet marked "attorney" or "legal" mail.

Contrary to the rules and regulations of NDCS, Miller received personal telephone calls from D.L. which were designated as attorney/client communications and thus not to be intercepted, listened to, or recorded by prison officials.

On November 11, 2019, and after prison officials intercepted her personal correspondence to D.L. in the middle of a packet marked "attorney" or "legal" mail, [Miller] self-reported her misconduct to the Counsel for Discipline . . . . She admitted her improper communications with inmate D.L. over a period of a full year, both by phone and letters under the guise of attorney-client communications. She took full responsibility for her behavior.

During the hearing, Miller testified that other than a handshake, she had no physical contact whatsoever with D.L. The evidence shows their romantic relationship was limited to letters and phone calls. The relator offered no evidence to the contrary.

. . . .

- 903 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

It is accurate that after her self-report to the Counsel for Discipline on November 11, 2019, [Miller] continued to receive phone calls from D.L. He used his PIN number as well as the PIN numbers of other inmates to place calls to Miller. Eventually, after corrections officials had blocked all calls to Miller's number, D.L. started placing calls to her using a telephone number purportedly belonging to his grandfather.

When [Miller] resigned her position from the ACLU, there is no evidence that she continued to send letters to D.L. inside privileged attorney envelopes, or that she initiated phone calls with him. After her resignation from the ACLU, [Miller] believed the calls she received from D.L. were no longer attorney calls, and, as such, were subject to prison monitoring and recording. She was unaware that even after her ACLU resignation, the prison system continued to treat D.L.'s calls to her as attorney calls.

[Miller] testified that she was unaware that as of December 2, 2019, prison officials blocked D.L. from calling her number, or that subsequent to this, D.L. had used the PIN numbers of other inmates to place calls to her. There is no evidence to refute her testimony in this regard.

[Miller] further denied having any knowledge of D.L.'s use of his grandfather's purported phone number to place calls to her, and there is no evidence to the contrary. She admitted she received 129 calls from D.L. during the time he utilized his grandfather's purported number, but she believed those calls were subject to being monitored and recorded, which they were.

The referee agrees with the relator and [Miller] that she did not engage in any additional misconduct after she self-reported to the Counsel for Discipline on November 11, 2019. There is no clear or convincing evidence to the contrary.

- 904 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

> [Miller] has submitted substantial evidence regarding her depression and mental health problems which she contends contributed to her beginning a personal relationship with D.L. While she fully acknowledges that her depression is not a justification for her misconduct, she submits that her mental health difficulties at the time helps explain her poor decision to cross a boundary she knew was improper.

Miller later paid for filing fees and publication costs for D.L. in his legal action to legally change his name to "D.F." in his case in the district court for Johnson County, case No. CI 20-06. D.L., now known as D.F., was paroled from Tecumseh on May 18, 2020. He was released to Miller's home in Lincoln. Miller has no previous disciplinary violations. The record does not include evidence of whether Miller's conduct caused further repercussions for D.F.

The referee stated that Miller's violation of the attorney-client privilege regarding protected communication between a lawyer and an inmate at a state prison is "significant." The referee found that the

> privilege must not be abused because it is fundamental to the rights of inmates. If lawyers are not allowed unmonitored and unrecorded communication, they cannot serve their clients. In addition, by misrepresenting herself to prison officials as D.L.'s attorney to pursue a nonphysical romantic relationship with a vulnerable person, [Miller] frustrated the relationship between prison officials and the legal profession.

The referee also noted that her conduct potentially jeopardized the federal class action case, that her abrupt resignation from the ACLU placed additional burden on other attorneys and staff, and that she exposed an inmate to sanctions due to his violation of prison rules.

The referee identified numerous mitigating factors. Miller was open about her conduct, expressed remorse, and cooperated with the relator. She did not try to blame others for her

- 905 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

conduct. The referee found that there are no concerns about Miller's competency to practice law and concluded that in spite of her history of depression and its effects on her work, she is receiving appropriate medical care and counseling. Numerous letters of support in the record attested to Miller's outstanding character and work to protect the civil rights of underserved and marginalized people. She continues to work to protect civil rights in a position at Disability Rights Nebraska. This setting is less stressful than her previous employment.

The referee recommended that Miller be suspended from the practice of law for 30 days, with a period of probation for 18 months to monitor her compliance with her treatment plans.

Miller objected to the referee's recommended sanction and argues that a suspension is excessive. Miller contends that a public reprimand followed by a probationary period would be appropriate.

## ASSIGNMENT OF ERROR

Miller takes exception to the referee's recommended sanction but does not challenge the truth of the referee's findings. Therefore, the only question before this court is the appropriate discipline.

## STANDARD OF REVIEW

[1] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings. *State ex rel. Counsel for Dis. v. Sipp*, 314 Neb. 208, 989 N.W.2d 712 (2023).

## ANALYSIS

We previously granted judgment on the pleadings as to the facts alleged in the formal charges. Further, Miller does not challenge the truth of the referee's findings of fact. Based on

- 906 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

the foregoing, we find that the facts establish misconduct. Miller violated her oath of office as an attorney licensed to practice law in the State of Nebraska as provided in § 7-104 and the following provisions of the Nebraska Rules of Professional Conduct on misconduct, § 3-508.4:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct[,] knowingly assist or induce another to do so or do so through the acts of another;

. . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

[2,3] Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *State ex rel. Counsel for Dis. v. Sipp, supra.* The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances. *Id*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, Neb. Ct. R. § 3-310(N) (rev. 2023).

[4,5] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we

- 907 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Sipp, supra*. The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public. *State ex rel. Counsel for Dis. v. Jorgenson*, 302 Neb. 188, 922 N.W.2d 753 (2019).

[6-8] With respect to the imposition of attorney discipline, each attorney discipline case must be evaluated in light of its particular facts and circumstances. *State ex rel. Counsel for Dis. v. Sipp, supra*. For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *State ex rel. Counsel for Dis. v. Jorgenson, supra*. The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *Id*. We do not find a previous disciplinary case to be precisely on point involving similar mitigating circumstances and implicating the same misconduct concerns.

Miller argues that the recommended 30-day suspension of the referee is excessive in light of the mitigating circumstances in her case and asks that we impose a public reprimand and probationary period, without a suspension. The relator is amenable to a range of disciplines.

There are numerous letters of support in the record from Miller's counselors and members of the community. There is no question that Miller's career has been dedicated to protecting the rights of Nebraskans for over 25 years. She has cooperated with the relator, is remorseful, and accepts

- 908 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

responsibility for her conduct. These facts serve to mitigate the misconduct found in this case.

The substantial evidence of Miller's depression is also a mitigating circumstance. See, e.g., *State ex rel. Counsel for Discipline v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002). We have said that in cases involving depression as a mitigating factor, a period of mandatory suspension coupled with terms of reinstatement will often be appropriate. *State ex rel. Counsel for Dis. v. Switzer*, 280 Neb. 815, 790 N.W2d 433 (2010). There is ample evidence to show that depression contributed to Miller's misconduct. She has participated fully in counseling and other treatment. We are aware of our discipline cases involving an attorney's mental health issues where treatment substantially reduces the risk of further misconduct, see, e.g., *State ex rel. Counsel for Dis. v. Thompson, supra*, and find that Miller's mental health treatment has substantially reduced the risk to the public.

However, Miller's misconduct was significant, especially considering the crucial relationship between prison officials and the legal profession. Miller's violation of that relationship is prejudicial to the administration of justice. See § 3-508.4(d). Her abuse of the attorney-client privilege involved a large number of phone calls and attorney envelopes marked privileged, yet containing personal correspondence of a romantic nature. These acts took place over a period of a year, and Miller did not self-report until the correspondence was discovered. We find that Miller's conduct was not a momentary lapse of judgment.

In light of the particular facts and circumstances in this case, we suspend Miller from the practice of law for 90 days, followed by a probationary period of 9 months upon reinstatement to ensure she remains compliant with her medical care and mental health counseling and medication, to be monitored by the Director of the Nebraska Lawyers Assistance Program or another individual approved by this court.

- 909 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. MILLER
Cite as 316 Neb. 899

## CONCLUSION

Miller's exception to the recommended sanction is overruled. It is the judgment of this court that Miller is hereby suspended from the practice of law for a period of 90 days, effective immediately. Miller may apply for reinstatement prior to the end of the period of suspension, which application will be considered on the basis of a showing of her fitness to practice law and compliance with all requirements. Upon reinstatement, Miller shall be subject to a 9-month term of probation as described in the previous section.

Miller is directed to comply with Neb. Ct. R. § 3-316 (rev. 2014) of the disciplinary rules, and upon failure to do so, she shall be subject to punishment for contempt of this court. Accordingly, Miller is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2022), as well as § 3-310(P) and Neb. Ct. R. § 3-323(B) of the disciplinary rules, within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF SUSPENSION.