Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/24/2025 09:09 AM CDT

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator, v.
Oliver J. Glass, respondent.
___ N.W.3d ___

Filed October 24, 2025.    No. S-24-166.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.
2. **Disciplinary Proceedings.** Violation of a disciplinary rule concerning the practice of law is a ground for discipline.
3. ____. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances.
4. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.
5. ____. The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public.
6. **Disciplinary Proceedings: Public Officers and Employees.** Misconduct is aggravated when it is committed by an attorney holding elected office.
7. ____. The Nebraska Supreme Court evaluates attorney discipline in light of the particular facts and circumstances of the case.

Original action. Judgment of disbarment.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Clarence E. Mock, of Johnson & Mock, P.C., L.L.O., for respondent.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Per Curiam.

## INTRODUCTION

This is an attorney discipline case in which the only question before this court is the appropriate sanction. The Counsel for Discipline of the Nebraska Supreme Court, the relator, brought formal charges against Oliver J. Glass, the respondent, based on conduct that included three driving under the influence (DUI) offenses, stalking his estranged wife's boyfriend, and the misuse of his authority as the elected Dodge County Attorney, which resulted in his federal incarceration for conspiracy to deprive a person of his rights under the color of law. We appointed a referee, who, after an evidentiary hearing, determined that the respondent violated his oath of office as an attorney, as set forth in Neb. Rev. Stat. § 7-104 (Reissue 2022), and violated Neb. Ct. R. of Prof. Cond. §§ 3-504.4(a) and 3-505.3, as well as Neb. Ct. R. of Prof. Cond. § 3-508.4 (rev. 2016). The referee recommended that the respondent be disbarred retroactive to the date of his temporary suspension on February 24, 2021.

We granted the parties' joint motion for judgment on the pleadings as to the facts and directed the parties to brief the issue of discipline. The respondent takes exception to the recommended disbarment as being excessive and asks that we impose a period of suspension with credit for his period of temporary suspension.

Upon our de novo review and for the reasons set forth herein, we order that the respondent be disbarred from the practice of law in the State of Nebraska effective retroactively to July 6, 2024, the date of the respondent's third DUI offense.

## STATEMENT OF FACTS

We granted the parties' joint motion for judgment on the pleadings and consider the referee's factual findings final and conclusive. Certain facts herein are based on the referee's report and evidentiary record.

The respondent was admitted to the practice of law in the State of Nebraska on April 11, 2006. In 2009, the respondent married Katie Glass (Katie). Two children were subsequently born to them. In 2011, the respondent was appointed to serve as the county attorney of Dodge County, Nebraska. The respondent was elected as county attorney in 2014 and reelected in 2018.

On November 16, 2018, Katie filed a "Complaint for Legal Separation" from the respondent in Dodge County. In October 2019, Katie met Nathan Schany, and they began dating in December 2019. On January 3, 2020, Katie filed an "Amended Complaint for Dissolution of Marriage." In March 2020, the respondent learned that Katie was dating Schany. The respondent's admissions and submitted record establish that he was under great emotional distress upon learning that Katie had developed a new relationship and that he began drinking heavily.

As part of the respondent's employment as the Dodge County Attorney, he had access to the Nebraska Criminal Justice Information System (NCJIS). NCJIS is an internet-based, law enforcement database that Nebraska criminal justice professionals can utilize in their official capacities to search for and view criminal justice and personal information of individuals who reside in, are employed in, or have criminal histories in the State of Nebraska. NCJIS is limited to official law enforcement purposes, pursuant to the rules and regulations of the State of Nebraska and the Nebraska Commission on Law Enforcement and Criminal Justice.

Within minutes after learning that Katie had a new relationship, the respondent logged in to NCJIS and looked up Schany. The respondent also made calls to several law enforcement

officers to discuss Schany, and they then researched Schany on NCJIS. Beginning on March 6, 2020, the respondent and two other employees of the Dodge County Attorney's office, acting at the respondent's direction, used their official credentials to access the NCJIS database and view information related to Schany, including vehicle registration data and other personal information. This was done on approximately 15 different occasions.

On March 11, 2020, and into March 12, the respondent transmitted multiple Facebook and text message communications to Schany, which contained intimidating and threatening language. In these messages, the respondent referred to Schany as "faggot," "[p]ussy," "stupid bitch," and "slightly restarted [sic]." These messages included references regarding Schany's residence and vehicle that the respondent had obtained from NCJIS.

The respondent used the information that he and two of his employees had obtained from NCJIS to surveil Katie and Schany and to drive by Schany's residence. The respondent took photographs of Katie's vehicle at Schany's residence.

On March 23, 2020, the respondent was arrested and charged with DUI, first offense, in Dodge County, in case No. CR 20-545. On March 24, the respondent admitted himself to Valley Hope in O'Neill, Nebraska, for inpatient alcohol treatment. He completed the program on April 15 and returned to his home in Fremont, Nebraska.

While the respondent was in substance abuse treatment at Valley Hope, he called an employee of the Dodge County Attorney's office and asked that employee to drive by Katie's residence and Schany's residence and to let him know if they were together. The respondent also directed the employee to pull Schany's information from NCJIS for the respondent's use.

In August 2020, the respondent admitted to the relator that he had (1) relapsed twice in June and again on July 3 by consuming alcohol, (2) purchased alcohol on August 8 but

claimed he did not consume it, and (3) purchased alcohol on August 11 and consumed some of the alcohol.

*First DUI Offense: Case No. CR 20-545.*

On August 17, 2020, the respondent was convicted of DUI, first offense, and was sentenced to 15 months' probation.

On September 19, 2020, the respondent tested positive for alcohol through the ignition interlock device in his vehicle and admitted to his probation officer that he had drunk mouthwash. On January 12, 2021, the respondent tested positive for alcohol during a urine screen by probation. He admitted to his probation officer that he had consumed alcohol the night before. The respondent also admitted to his probation officer that he had consumed alcohol in November 2020. On May 3, 2021, the respondent was convicted of violating his probation, and the probation order was extended for an additional 18 months.

*Second DUI Offense: Case No. CR 21-537.*

On January 28, 2021, while still on probation, the respondent, who was intoxicated, arrived at Katie's residence to pick up his children. Katie called the respondent's probation officer, and the respondent drove off. Later that day, the respondent was administered a preliminary breath test at his home and tested positive for alcohol. The respondent was arrested and convicted of an amended charge of DUI, first offense, and was sentenced to 18 months' probation. Thereafter, the DUI convictions in cases Nos. CR 20-545 and CR 21-537 were treated identically, and the respondent was released from probation in both cases on November 4, 2022.

*Temporary Suspension of License to Practice Law.*

As a result of the respondent's DUI convictions and his subsequent probation violation, the relator sought the temporary suspension of the respondent's license to practice law in Nebraska. On February 24, 2021, we temporarily suspended

the respondent's license to practice law. The order of temporary suspension remains in effect.

On March 1, 2021, the respondent resigned his position as the Dodge County Attorney.

*Federal Charges and Conviction.*

On September 24, 2021, the respondent was indicted in the U.S. District Court for the District of Nebraska on two felony counts of cyberstalking. The respondent ultimately entered into a plea agreement wherein the prosecutor reduced the charges to one misdemeanor count of conspiracy to deprive a person of his or her rights under color of law. On February 21, 2023, the respondent was sentenced to a 9-month prison term to be followed by a period of supervised release for 1 year. The respondent served his prison sentence and began his term of supervision on October 25.

*Third DUI Offense: Case No. CR 24-9041.*

The respondent's most recent DUI offense took place on July 6, 2024, after he attended a wedding reception in Lincoln, Nebraska. He reconnected with some old friends at the reception and relapsed. He chose to attempt to drive home to Fremont, but his vehicle became disabled, and law enforcement arrived at the scene. The respondent was arrested, and on August 16 was charged in the Lancaster County Court with DUI, third offense. The respondent entered a guilty plea, and on October 25, he was sentenced to 30 days in jail and 36 months' probation and ordered to pay a fine. He was ordered to, inter alia, apply for and maintain an ignition interlock permit for 5 years, after a 45-day period of no driving. Additionally, the court ordered the respondent to attend two Alcoholics Anonymous meetings per week for the duration of his probation. The respondent began serving his jail sentence on November 1 and, according to the record, is projected to remain sentenced to probation until October 2027.

As a result of the respondent's DUI arrest in Lancaster County, Nebraska, he was charged in his federal case with

violating the terms of his supervised release. On December 4, 2024, the respondent admitted that he had violated a mandatory condition of the terms of his supervised release, and the federal court sentenced the respondent to 6 months' supervision commencing on December 4.

*Formal Charges and Referee's Recommendation.*

On December 6, 2024, the respondent was formally charged with violations of the Nebraska Rules of Professional Conduct and his oath of office as an attorney. On December 10, the respondent filed his answer to the amended formal charges and admitted the facts above. The respondent admitted that he violated his oath of office as an attorney licensed to practice law in the State of Nebraska as provided by § 7-104 of the Nebraska Revised Statutes, as well as § 3-505.3 (responsibilities regarding nonlawyer assistants) and § 3-508.4(a) and (d) (misconduct) of the rules of professional conduct. The respondent denied the remaining allegations. The respondent has no previous disciplinary violations.

We appointed a referee to conduct an evidentiary hearing. The referee's report, issued on February 11, 2025, found that the allegations contained in the amended formal charges have been proved by clear and convincing evidence. The referee found that the respondent violated his oath of office as an attorney, as well as §§ 3-504.4(a), 3-505.3, and 3-508.4(a), (b), (c), and (d) of the Nebraska Rules of Professional Conduct. The referee recommended that the respondent be disbarred from the practice of law retroactive to the date of the respondent's temporary suspension on February 24, 2021. He recommended disbarment in this case because "[the respondent's] conduct was clearly contrary to the reputation of the bar as a whole and the protection of the public." The referee emphasized the "need to deter other attorneys from engaging in the same or similar conduct, especially government lawyers whose improper conduct is more likely to tarnish the entire system of justice and erode public trust."

The referee examined the evidence that showed that the respondent was under great emotional distress upon the breakup of his marriage and upon learning Katie was engaged in a new relationship. The respondent began drinking heavily, which contributed to his descent into self-destructive behavior.

The referee found that in addition to the respondent's DUI offenses, he seriously violated the use of his authority as an elected Dodge County Attorney. The referee quoted the government's brief in the respondent's federal case, in which the government argued that the respondent's admitted conduct was a "sort of weaponization of law enforcement and criminal investigations for personal benefit" and that it "undermines the respect for the law." On this offense, the respondent was ultimately sentenced to 9 months' imprisonment, followed by 1 year of supervised release. The referee emphasized that improper conduct on the part of a government attorney is more likely to harm the entire system of government in terms of public trust.

The referee found mitigating factors, including the respondent's cooperation with the relator and the fact that the respondent does not have a previous disciplinary history. The respondent fully admits his problem with alcohol and has undertaken both inpatient and outpatient treatment programs to address it. However, the referee noted that "[u]nfortunately, [the respondent's] efforts towards long-term sobriety, to date, have largely been unproductive as he has suffered several relapses. His road to recovery and long-term sobriety has been difficult."

The referee also reviewed letters of support and testimony on behalf of the respondent that described the respondent's work ethic as "exceptional" and opined that he is competent and could return to the practice of law within the rules of professional conduct. The letters attest to the respondent's good character. However, most of the letters are dated prior to or just after the respondent's most recent and third DUI

offense that occurred on July 6, 2024, and make no mention of the offense.

*Judgment on the Pleadings.*

On March 3, 2025, we granted the motion for judgment on the pleadings as to the facts, but not the recommended disciplinary sanction. Thus, it is undisputed that the respondent violated his oath of office as an attorney licensed to practice law in the State of Nebraska as provided in § 7-104, as well as the provisions of the Nebraska Rules of Professional Conduct §§ 3-504.4(a), 3-505.3, and 3-508.4(a), (b), (c), and (d), as set forth in the amended formal charges.

We directed the parties to brief the issue of discipline.

## ASSIGNMENT OF ERROR

The respondent takes exception to the referee's recommended sanction but does not challenge the truth of the referee's findings.

## STANDARD OF REVIEW

[1] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings. *State ex rel. Counsel for Dis. v. Miller*, 316 Neb. 899, 7 N.W.3d 642 (2024).

## ANALYSIS

We previously granted judgment on the pleadings as to the facts. The respondent does not challenge the truth of the referee's findings of fact. Based on the foregoing, we find that the facts establish misconduct. The respondent violated his oath of office as an attorney licensed to practice law in the State of Nebraska as provided in § 7-104 and the following provisions of the Nebraska Rules of Professional Conduct: §§ 3-504.4(a), 3-505.3, and 3-508.4(a), (b), (c), and (d). We limit the remainder of our discussion to the appropriate discipline.

[2,3] Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *State ex rel. Counsel for Dis. v. Miller, supra*. The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances. *Id*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, Neb. Ct. R. § 3-310(N) (rev. 2023).

*Relevant Factors.*

[4,5] To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Miller, supra*. The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public. *Id*.

With respect to the imposition of attorney discipline, each attorney discipline case must be evaluated in light of its particular facts and circumstances. *Id*. For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *Id.* The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases. *Id*.

[6] We have explained that the conduct of a government attorney is "required to be more circumspect than that of a private lawyer." *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 62, 416 N.W.2d 515, 550 (1987). Government attorneys are invested with the public trust and are more visible to the public. *Id*. Lawyers holding public office assume legal responsibilities going beyond those of other citizens. § 3-508.4, comment 5. Thus, we have found that misconduct is aggravated when it is committed by an attorney holding elected office. See *State ex rel. Counsel for Dis. v. Council*, 289 Neb. 33, 853 N.W.2d 844 (2014).

In this case, the respondent committed multiple violations of the disciplinary rules, violated federal and state law, and abused his elected office as a county attorney. The respondent's misconduct not only affected Katie, Schany, and his children, but also endangered public confidence in the legal profession and the justice system. His criminal cases generated negative publicity that affected the reputation of the bar and the criminal justice system.

We note that the respondent has no previous disciplinary history. The referee's report details the respondent's struggles with alcohol use and mental health and his actions to rehabilitate himself and pursue treatments. Nonetheless, as the report notes, the respondent has faced a "difficult" road to sobriety, including a recent relapse and conviction for a third DUI offense while he was still on federal probation and during the pendency of these disciplinary proceedings.

In light of the particular facts and circumstances in this particular case set forth in detail above, and taking into account aggravating and mitigating factors, we disbar the respondent from the practice of law, effective beginning from the date of his most recent DUI offense on July 6, 2024.

*Retroactivity of Sanction.*

The referee recommended that the respondent be disbarred from the practice of law with an effective date retroactive to the date of his temporary suspension, February 24, 2021. The respondent also argues that any discipline he receives should be retroactively applied, as in several other disciplinary cases. See, *State ex rel. Counsel for Dis. v. Vanderford*, 317 Neb. 771, 12 N.W.3d 219 (2024); *State ex rel. Counsel for Dis. v. Castrejon*, 311 Neb. 560, 973 N.W.2d 701 (2022); *State ex rel. Counsel for Dis. v. Council, supra*; *State ex rel. Counsel for Dis. v. Finney*, 276 Neb. 914, 758 N.W.2d 622 (2008); *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987). The relator notes that in other cases, we imposed a sanction effective immediately and did not credit the attorney for temporary suspension. See, *State ex rel. Counsel for Dis. v. Campbell*, 318 Neb. 23, 13 N.W.3d 97 (2024); *State ex rel. Counsel for Dis. v. Gage*, 316 Neb. 443, 4 N.W.3d 885 (2024); *State ex rel. Counsel for Dis. v. Nelson*, 311 Neb. 251, 971 N.W.2d 777 (2022); *State ex rel. Counsel for Dis. v. Jorgenson*, 302 Neb. 188, 922 N.W.2d 753 (2019).

[7] In our de novo review, we evaluate attorney discipline in light of the particular facts and circumstances of the case. See *State ex rel. Counsel for Dis. v. Miller*, 316 Neb. 899, 7 N.W.3d 642 (2024). In this case, where the respondent committed cumulative violations of the disciplinary rules, violated his federal probation, and committed a third DUI offense while these proceedings were pending, the facts do not support a credit for the period of temporary suspension during which the respondent's misconduct continued. We note in particular that as a result of his third DUI offense, according

to the record, it is projected that the respondent will remain on probation until October 2027. The facts do not give us confidence in the respondent's responsible practice of law, nor are the facts compatible with retroactivity back to February 2021.

We take this opportunity to clarify that there is no presumption that an attorney who receives a disciplinary sanction will receive credit for time during which the attorney is suspended or during the investigations and pendency of the disciplinary proceedings. If an application for reinstatement is made at least 5 years after the final order of disbarment in an attorney discipline case, there is no presumption that an application for reinstatement from an order of disbarment will be granted. See § 3-310(T) through (V).

## CONCLUSION

It is the judgment of this court that the respondent be disbarred from the practice of law in the State of Nebraska, effective from the date he committed his third DUI offense on July 6, 2024.

The respondent is directed to comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, he shall be subject to punishment for contempt of this court. The respondent is further directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2022) and § 3-310(P) and Neb. Ct. R. § 3-323(B) of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF DISBARMENT.